# Exhibit A

Case 4:21-cv-03213   Document 1-1   Filed on 10/04/21 in TXSD   Page 2 of 13

9/28/2021 3:53 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 57681735
By: Carolina Salgado
Filed: 9/28/2021 3:53 PM

CAUSE NO. _____

| | | |
|---|---|---|
| INTERCONTINENTAL TERMINALS COMPANY LLC, | § § § § § § § § § § § § | IN THE DISTRICT COURT OF |
| *Plaintiff,* | | |
| V. | | HARRIS COUNTY, TEXAS |
| NSK CORPORATION and NSK LTD., | | |
| *Defendants.* | | ____ JUDICIAL DISTRICT |

## PLAINTIFF'S ORIGINAL PETITION AND JURY DEMAND

Plaintiff Intercontinental Terminals Company LLC ("ITC" or "Plaintiff") files this Original Petition and Jury Demand against Defendants NSK Corporation and NSK Ltd. (collectively, "NSK" or "Defendants") and would respectfully show the following:

### I.   DISCOVERY CONTROL PLAN

1. ITC intends discovery be conducted under Discovery Level 3 as provided by Texas Rule of Civil Procedure 190.4.

### II.   PARTIES

2. Plaintiff Intercontinental Terminals Company LLC is a Delaware limited liability company with its principal place of business located at 1943 Independence Parkway, La Porte, Texas 77571. ITC may be served through its registered agent, CT Corporation System, 1999 Bryan Street, Suite 1900, Dallas, Texas, 75201.[1]

---

[1] Certain insurers are also real-parties-in-interest and bring this lawsuit with ITC, pursuant to their subrogation rights under insurance policies with ITC for their respective damages and claims. The claims of ITC, individually, and these insurers are separate and distinct from the claims brought by Zabel Freeman on behalf of various property underwriters in *Intercontinental Terminals Company, LLC v. NSK Corporation and NSK Ltd.*, Cause No. 2021-61020, in the 295th District Court of Harris County, Texas, which was removed on September 24, 2021 to the United States District Court, Southern District of Texas, Houston Division, Case No. 4:21-cv-03120.

3. Defendant NSK Ltd. is a foreign business entity located at the Nissei Building, 1-6-3 Ohsaki, Shinagawa-Ku, Tokyo, 141-8560, Japan. NSK Ltd. has sufficient business contacts with the State of Texas for the purpose of accumulating monetary profit, but does not maintain a regular place of business or a designated agent upon whom service of process may be performed for causes of action arising out of or related to such business done in the State of Texas. For these reasons, service of process may be made pursuant to Texas Rule of Civil Procedure 108a, by and through the Convention on Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, done at The Hague, November 15, 1965. 20 U.S.T. 361, T.I.A.S. No. 6638, 658 U.N.T.S.  Said documents are to be forwarded to the Central Authority of Japan as required by The Hague Convention, to wit: Hague Convention Division, Consular Affairs Bureau Ministry of Foreign Affairs, 100-8919 Kasumigaseki 2-2-1, Chiyoda-ku, Tokyo, Japan. Because NSK Ltd. engages in business in the State of Texas, but does not maintain a regular place of business or a designated agent for service of process in the State of Texas, service of process is also authorized under Section 17.044(b) of the Texas Civil Practice & Remedies Code by serving the Secretary of State of Texas as agent for NSK Ltd.  NSK Ltd. purposefully availed itself of the benefits of conducting activities in Texas and the Court's exercise of jurisdiction therefore comports with traditional notions of fair play and substantial justice.

4. Defendant NSK Corporation is a foreign corporation located at 4200 Goss Road, Ann Arbor, Michigan 48105. NSK is incorporated under the laws of the State of Delaware, has its principal place in Michigan, and is authorized to conduct business in the State of Texas. NSK may be served through its registered agent, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company at 211 E. 7thStreet, Suite 620, Austin, Texas 78701.

### III. JURISDICTION AND VENUE

5. Venue is proper in Harris County, Texas pursuant to Texas Civil Practice and Remedies Code § 15.002(a)(1) because all or a substantial part of the events giving rise to the claims at issue occurred in Harris County, Texas.

6. The Court has personal jurisdiction over Defendants because Defendants had purposeful contacts with the state of Texas, ITC's claims arise out of or relate to Defendants' contacts with the state of Texas, and the Court's exercise of jurisdiction over Defendants is fair and reasonable.

7. In accordance with Texas Rule of Civil Procedure 47(c), ITC seeks monetary relief in an amount well above $1,000,000.00, along with other relief as set forth below. The amount in controversy is within the jurisdictional limits of the Court.

### IV. FACTUAL BACKGROUND

8. ITC operates a bulk liquid storage terminal located at 1943 Independence Parkway, LaPorte, Harris County, Texas (the "Deer Park Facility").

9. On Sunday, March 17, 2019, a fire ignited at approximately 10 a.m. at the Deer Park Facility in the vicinity of a pump for a tank identified as Tank 80-8, which was located in an area designated as the First and Second 80s Tank Farm (the "Incident"). The fire engulfed Tank 80-8 and eventually spread to other product storage tanks in the First and Second 80s Tank Farm and burned for several days, despite the efforts of response crews. On March 22, 2019, a partial breach of the containment wall surrounding the First and Second 80s Tank Farm led to a discharge of a mixture of materials into a ditch along Tidal Road.

10. Following the Incident, ITC, in consultation with outside engineering experts, conducted an extensive root cause analysis that spanned many months and included the review of process data, historical information, photographs, videos, site and evidence inspections,

personnel interviews, and engineering analyses (the "Root Cause Analysis"). This analysis allowed the investigation team to identify the root cause of the Incident.

11. Tank 80-8, like the other tanks in the First and Second 80s Tank Farm, had a dedicated piping manifold that allowed for product to be received into the tank and sent from the tank to barges, vessels, trucks, and railcars for transportation. The Tank 80-8 manifold area also contained a pump, which circulated product through the associated piping. The power end of the pump housed an impeller shaft surrounded by two sets of ball bearings. When functioning properly, the ball bearings support and maintain alignment for the impeller shaft, which rotates the impeller to allow for product movement.

12. A post-Incident metallurgical analysis of the Tank 80-8 pump revealed that the NSK Model 5313 outboard bearing that had been installed had individual balls with internal voids that had compromised the structural integrity and resulted in a failure of the bearings.

13. The NSK Model 5313 outboard bearing's failure compromised the pump's axial load support, causing the impeller shaft to vibrate, loosening the bolted connections securing the mechanical seal mounted to the impeller shaft. The mechanical seal, when not compromised, prevents product that is circulating through the pump volute casing from leaking out along the shaft. The failure of the NSK Model 5313 outboard bearing caused the mechanical seal to separate from the seal chamber cover and allowed a release of naphtha from the pump.

14. The release of naphtha from the pump resulted in the formation of a flammable vapor cloud that eventually ignited, causing the Incident.

### V. CAUSE OF ACTION I: NEGLIGENCE

15. ITC incorporates and realleges the matters set forth in each of the preceding paragraphs.

16. Defendants committed acts of omission and commission. Defendants owed a duty to ITC to exercise ordinary care, meaning that degree of care that would be used by a company, designer, manufacturer, or distributor of ordinary prudence under the same or similar circumstances. NSK breached that duty, including in, but not limited to, one or more of the following ways:

    a. Failing to adequately, properly and/or safely design, manufacture, test, and market the NSK Model 5313 ball bearings and/or their parts and/or components, including, but not limited to, the internal-void design;

    b. Failing to design, manufacture, test, and market the NSK Model 5313 ball bearings and/or their parts and/or components, in a good and workmanlike manner;

    c. Failing to follow industry standards in designing, manufacturing, testing, and marketing the NSK Model 5313 ball bearings and/or their parts and/or components;

    d. Failing to provide, establish and/or follow proper and adequate controls and/or procedures as to ensure the safety and integrity of the NSK Model 5313 ball bearings and/or their parts and/or components;

    e. Otherwise failing to use reasonable care under the circumstances; and

    f. Other acts of negligence that may be determined as discovery progresses.

17. Each of the above-referenced acts and omissions, singularly or in combination with others, caused the release of naphtha at the Deer Park Facility and ITC's resulting damages arising from the March 17, 2019 fire.

18. ITC seeks to recover from NSK all of its damages sustained as a result of and proximately caused by Defendants' negligence.

### VI. CAUSE OF ACTION II: BREACH OF IMPLIED WARRANTY

19. ITC incorporates and realleges the matters set forth in each of the preceding paragraphs.

20. Defendants impliedly warranted that they designed and manufactured merchantable NSK 5313 ball bearings and that the NSK 5313 ball bearings were fit for a particular purpose for which ITC required the NSK 5313 ball bearings. *See* U.C.C. §§ 2-314, 2-315. Defendants breached this implied warranty in one or more of the following respects:

   a. Failing to adequately, properly and/or safely design, manufacture, test, and market the NSK Model 5313 ball bearings and/or their parts and/or components;

   b. Failing to design, manufacture, test, and market the NSK Model 5313 ball bearings and/or their parts and/or components in a good and workmanlike manner;

   c. Failing to follow industry standards in designing, manufacturing, testing, and marketing the NSK Model 5313 ball bearings and/or their parts and/or components;

   d. Failing to provide, establish and/or follow proper and adequate controls and/or procedures as to ensure the safety and integrity of the NSK Model 5313 ball bearings and/or their parts and/or components; and

   e. Otherwise failing to use due care under the circumstances.

21. Each of the above-referenced acts and omissions, singularly or in combination with others, constituted a breach of implied warranty. NSK's breach of the implied warranty was a producing and/or proximate cause of the damages suffered by Plaintiff, which are in excess of the minimum jurisdictional limits of this Court. ITC has complied with all notice requirements.

### VII.   CAUSE OF ACTION III: MANUFACTURING DEFECT

22. ITC incorporates and realleges the matters set forth in each of the preceding paragraphs.

23. Defendants engaged in the business of manufacturing and placing into the stream of commerce the NSK Model 5313 bearings that caused the March 17, 2019 release of

naphtha and resulting damages. As such, Defendants are "manufacturer[s]" as that term is defined by Texas Civil Practice and Remedies Code Section 82.001(4).

24. Defendants manufactured the NSK Model 5313 bearings and placed them into the stream of commerce with the expectation that those bearings would, and in fact did, reach the user or consumer without substantial change in the condition in which the bearings were sold.

25. A manufacturing defect exists when a product deviates, in its construction or quality, from the specifications or planned output in a manner that renders it unreasonably dangerous.

26. Upon information and belief, the NSK Model 5313 bearings, at the time they were placed into the stream of commerce by Defendants, were in a defective condition unreasonably dangerous to the end user. Specifically, while the specification for the NSK Model 5313 bearings required that they contain a solid core, the bearings in the pump for Tank 80-8 contained internal voids. This fragmentation ultimately led to mechanical failure that allowed for the release of naphtha. If properly manufactured, the bearing balls for the NSK 5313 outboard bearing should have been solid throughout, like the bearing balls for the NSK 6313 inboard bearing that was in the Tank 80-8 pump.

27. The failure of the outboard bearing and subsequent release of naphtha would not have occurred if the NSK Model 5313 ball bearings—like their NSK Model 6313 counterparts—were manufactured with a solid core in accordance with their design specifications. The defect in the ball bearings was therefore a producing cause of the Incident at the Deer Park Facility.

### VIII.   CAUSE OF ACTION IV: DESIGN DEFECT

28. ITC incorporates and realleges the matters set forth in each of the preceding paragraphs.

29. In the alternative, to the extent that the NSK Model 5313 ball bearing did not deviate from their design specifications, Defendants are liable for ITC's damages because the design of the NSK Model 5313 ball bearings was defective.

30. To recover for a products liability claim alleging a design defect, ITC must prove that (1) the product was defectively designed so as to render it unreasonably dangerous; (2) a safer alternative design existed; and (3) the defect was a producing cause of the injury for which ITC seeks to recover.

31. Upon information and belief, Defendants' design of the NSK Model 5313 ball bearings was defective because they contained internal voids that rendered the bearings unreasonably dangerous for their intended use.

32. Rather than design the bearings with internal voids, Defendants should have utilized the solid-core design found in the NSK Model 6313. The fact that the NSK Model 5313 bearings deteriorated and fragmented while the solid-core NSK Model 6313 bearings did not demonstrates that the solid-core alternative design is safer than the internal-void design of the NSK Model 5313. These deviations resulted in the bearing being "unreasonably dangerous" because it ultimately failed, resulting in the Incident.

33. Similarly, the existence and utilization of the NSK Model 6313 ball bearings demonstrates that the solid core design is both technologically and economically feasible.

34. The internal-void design of the NSK Model 5313 ball bearings caused the failure of the outboard bearing and the subsequent release of naphtha resulting in the Incident. The failure of the outboard bearing and subsequent release of naphtha would not have occurred if the NSK Model 5313 ball bearings—like their NSK Model 6313 counterparts—were manufactured with a solid core in accordance with their design specifications. The defect in the ball bearings was

therefore a producing cause of the March 17, 2019 fire at the Deer Park Facility and ITC's injuries. Defendants are therefore liable for ITC's damages.

## IX.  JURY DEMAND

35. ITC demands a jury trial on all contested issues of fact and tenders the appropriate fee with this petition.

## X.  DAMAGES

36. ITC has suffered injuries as a result of Defendants' commissions and/or omissions and is therefore entitled to damages.

37. ITC's damages include but are not limited to the following:

   (i) Property damage to the Deer Park Facility;

   (ii) Loss of use of the Deer Park Facility;

   (iii) Business interruption;

   (iv) Loss of business and customer good will;

   (v) Costs associated with response efforts to the Incident including, but not limited to, direct and indirect costs associated with fighting the fire, air monitoring expenses, water discharge containment costs, clean-up costs, and other reasonable and necessary costs and expenses; and

   (vi) Fines, penalties, and payments of claims arising out of or resulting from the Incident.

## XI.  PRAYER FOR RELIEF

38. For the reasons sets forth herein, ITC respectfully requests an award consisting of (i) all actual and consequential damages supported by the evidence, including those identified above; (ii) pre-judgment and post judgment interest in the maximum amount permitted by law; (iii) costs and expenses of litigation, including court costs; and (iv) all other legal and equitable relief to which ITC is entitled.

Respectfully submitted,

BAKER BOTTS L.L.P.

By: /s/ Russell C. Lewis
    Russell C. Lewis
    Texas Bar No. 24036968
    Michael S. Goldberg
    Texas Bar No. 08075800
    Benjamin Gonsoulin
    Texas Bar No. 24099682
    Kelly Hanen
    Texas Bar No. 24101862
    Elizabeth Furlow Malpass
    Texas Bar No. 24109899
    910 Louisiana Street
    Houston, Texas 77002-4995
    Telephone:  (713) 229-1767
    Facsimile:  (713) 229-2867
    russell.lewis@bakerbotts.com
    michael.goldberg@bakerbotts.com
    ben.gonsoulin@bakerbotts.com
    kelly.hanen@bakerbotts.com
    elizabeth.furlow@bakerbotts.com

ATTORNEYS FOR PLAINTIFF
INTERCONTINENTAL TERMINALS
COMPANY LLC

JACKSON WALKER LLP

David T. Moran
State Bar No. 14419400
Brett Kutnick
State Bar No. 00796913
2323 Ross Avenue, Suite 600
Dallas, Texas 75201
(214) 953-6051
dmoran@jw.com
bkutnick@jw.com

ATTORNEYS FOR REAL PARTIES IN INTEREST ASSOCIATED WITH INTERCONTINENTAL TERMINALS COMPANY LLC

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Janet Guillory on behalf of Russell Lewis
Bar No. 24036968
janet.guillory@bakerbotts.com
Envelope ID: 57681735
Status as of 9/28/2021 4:27 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Russell Carter Lewis | 24036968 | russell.lewis@bakerbotts.com | 9/28/2021 3:53:13 PM | SENT |
| Michael S. Goldberg | 8075800 | michael.goldberg@bakerbotts.com | 9/28/2021 3:53:13 PM | SENT |
| Benjamin Gonsoulin | 24099682 | ben.gonsoulin@bakerbotts.com | 9/28/2021 3:53:13 PM | SENT |
| Kelly Hanen | 24101862 | kelly.hanen@bakerbotts.com | 9/28/2021 3:53:13 PM | SENT |
| Elizabeth Malpass | 24109899 | elizabeth.furlow@bakerbotts.com | 9/28/2021 3:53:13 PM | SENT |
| David Timothy Moran | 14419400 | dmoran@jw.com | 9/28/2021 3:53:13 PM | SENT |
| Brett David Kutnick | 796913 | bkutnick@jw.com | 9/28/2021 3:53:13 PM | SENT |